IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-20079-CIV-HUCK

LIL' JOE WEIN MUSIC, INC., a Florida
Corporation,

Plaintiff,

vs.

CURTIS JAMES JACKSON, p/k/a 50
CENT, SHADY RECORDS, INC., a New
York Corporation, AFTERMATH
ENTERTAINMENT, INC., a California
Corporation, INTERSCOPE RECORDS,
INC., a Delaware Corporation, UNIVERSAL
MUSIC & VIDEO DISTRIBUTION CORP.,
a California Corporation.

Defendants.



_____/

## DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
## AND INCORPORATED MEMORANDUM OF LAW

Defendants Curtis James Jackson, p/k/a 50 Cent, Shady Records, Inc., Interscope

Records, a division of UMG Recordings, Inc. (erroneously sued as Interscope Records, Inc.), and

Universal Music & Video Distribution, Corp. ("Defendants"),[1] by their undersigned attorneys,

and pursuant to Rule 56(c) of the Federal Rules of Civil Procedure and Local Rule 7.5,

respectfully move this Court for the entry of summary judgment in their favor and against

plaintiff Lil' Joe Wein Music, Inc. ("Plaintiff") on all of the claims asserted in its Complaint.

_____

[1]     Defendant Aftermath Entertainment, Inc. ("Aftermath"), which was also involved with
the release of Defendants' works, was never served.  All of the arguments herein would be
equally applicable to Aftermath.



As detailed below, Defendants' motion should be granted on each of three independent grounds: (1) the allegedly infringed phrases are not original to Plaintiff's musical compositions; (2) the allegedly infringed phrases are not copyrightable; and (3) no substantial similarity exists between the musical compositions at issue, including because any similarity is *de minimis*.

## PRELIMINARY STATEMENT

This action encompasses two separate copyright infringement claims[2] – both cut from the same cloth and both meritless. Plaintiff is a music publishing company run by a lawyer, Joseph Weinberger, that obtained most of its assets through the 1995 bankruptcies of Weinberger's former clients, rap music performer Luther Campbell (a member of the defunct rap group 2 Live Crew) and entities he owned. Plaintiff (and its sister record company Lil' Joe Wein Music, Inc.) has filed at least a dozen lawsuits over the past decade; in this case, Plaintiff's target is acclaimed rap performer Curtis James Jackson, professionally known as 50 Cent ("50 Cent").

Each of Plaintiff's two claims is based on a short, common, non-copyrightable lyrical phrase that is not original to Plaintiff's musical compositions:

- In the musical composition *Sex I Like – I Love* aka *I Like It, I Love It*, co-written by Campbell and performed by 2 Live Crew in 1990, and now owned by Plaintiff, the lyrics contain an audience-participation call-and-response chant in which the singer asks the audience

---

[2]   The Complaint contains 14 separate counts, all of which are for copyright infringement and all of which arise from the two claims discussed in this motion. Counts I through IV aver that the CD Get Rich Or Die Tryin' (specifically the song *In Da Club*) infringes two versions of Plaintiff's composition *It's Your Birthday*. Counts V through XII aver that the DVD The New Breed infringes two versions of Plaintiff's composition *It's Your Birthday* and two versions of Plaintiff's composition *I Like It, I Love It*. Count XIII separately avers that the licensing of *In Da Club* infringes Plaintiff's exclusive rights under copyright, and Count XIV seeks injunctive relief for the same infringements.

2

to "say 'I like it,'" and the audience responds "I like it," then the singer asks the audience to say 'I love it,'" and the audience responds 'I love it.'" This identical call-and-response chant was a common "hip hop chant" for many years prior to its use by Campbell and 2 Live Crew. For example, rap artist Chief Rocker Busy Bee performed the same chant in the classic, widely-distributed early-1980s hip-hop movie Wild Style. Plaintiff nevertheless claims that 50 Cent infringed this phrase by employing a similar call-and-response chant during a brief interlude at a live concert (i.e., not even as part of a song or on an album) which was contained in a 2003 DVD called The New Breed.

- In the musical composition It's Your Birthday, written by Campbell in 1994 and now owned by Plaintiff, the lyrics contain the phrase "Go _____, it's your birthday," using various proper names – Sheila, Freddie, Anna, Derek, Tracy, etc. – in succession. This phrase also was not original to Campbell or to It's Your Birthday. Rather, the same common phrase in the same chanted cadence was (like the "I like it/I love it" chant) used and heard in nightclubs and parties for many years prior to Campbell's use of the chant in 1994 (for example, in the popular 1993 hip-hop movie Who's The Man, starring well-known MTV personalities Ed Lover and Doctor Dre and a host of famous rap artists). Plaintiff nevertheless claims that 50 Cent's song In Da Club, which is contained on both the DVD The New Breed and 50 Cent's 2003 CD Get Rich Or Die Tryin',[3] infringes It's Your Birthday because In Da Club contains the phrase (one time) "Go Shawty, it's your birthday."

Both of Plaintiff's claims are meritless. *First*, the phrases at issue were not original to Plaintiff's songs. Plaintiff has no contrary evidence (indeed, the actual author himself,

---

[3]    The Get Rich Or Die Tryin' album was also released in other configurations, including audiocassette and vinyl record. This motion applies to all such formats, but the term "CD" is used for clarity and simplicity.

Campbell, admits they are not original, but were pre-existing chants heard in clubs, parties, and concerts at the time). *Second*, the phrases are too short, common, and trite to be copyrightable. *Third*, the Court need only compare the entirety of Plaintiff's songs to Defendants' works to conclude that Defendants' uses were *de minimis* and the works are not substantially similar. Each of these issues can be determined as a matter of law. Because Plaintiff cannot meet its burden of showing any of these three necessary elements of a copyright infringement claim – originality, copyrightability, and substantial similarity – Defendants are entitled to summary judgment.

## STATEMENT OF UNDISPUTED FACTS

**The Plaintiff.** Plaintiff is a music publishing company, operated by an attorney, Joseph Weinberger. Deposition of Joseph Weinberger ("Weinberger Depo.") 6:24-7:5 (Ex. 1).[4] Weinberger has no musical training and does not write songs. Id. 52:13-53:15. From 1988 to 1994, Weinberger served as outside counsel and, thereafter, in-house counsel to musical performer Luther Campbell (who performed both as a solo act and with the group 2 Live Crew) and Jamdat Publishing, an entity owned by Campbell. Id. 9:4-10:15, 12:9-21, 17:25-18:6, 21:6-14. Plaintiff purchased the copyrights at issue in this case (among many others) at a 1995 bankruptcy sale arising from the insolvency of Campbell and Jamdat Publishing. Id. 15:13-17:2, 69:23-72:7. Since obtaining these copyrights, Plaintiff and its sister record company have filed at least a dozen lawsuits alleging claims for copyright and trademark infringement, among others, including suits against all of the former members of 2 Live Crew (though none pertaining

---

[4]     Exhibits filed simultaneously in support of Defendants' Motion for Summary Judgment are hereafter referenced as "(Ex. __ )."

to the two musical compositions at issue in this case).  Weinberger Depo. 57:18-58:22, 62:24-63:24, 68:21-69:4(Ex. 1)[5].

**Campbell and 2 Live Crew.**  Campbell and 2 Live Crew were well-known for basing their lyrics on already-popular phrases or slang expressions.  For example, 2 Live Crew's first hit song, *Me So Horny*, was based on an oft-quoted line from the 1987 Stanley Kubrick-directed film *Full Metal Jacket.*  Weinberger Depo. 65:16-66:24 (Ex. 1).  Campbell was also the successful defendant and petitioner in the seminal Supreme Court copyright case that arose from his parodic use of the music and lyrics from the popular Roy Orbison song *Pretty Woman.* Campbell v. Acuff-Rose Music, Inc., 510 U.S. 569 (1994).[6]

**The Defendants.**  Defendant 50 Cent is an acclaimed, world-renowned musical performer.  In 2003, defendants Shady Records, Inc. ("Shady") and Interscope Records, a division of UMG Recordings, Inc. (erroneously sued as Interscope Records, Inc.) ("Interscope"), through various direct and indirect contractual relationships with 50 Cent, released the Get Rich Or Die Tryin' CD and The New Breed DVD.  Defendant Universal Music & Video Distribution, Corp. distributed Get Rich Or Die Tryin' and The New Breed in the United States for Shady and Interscope.

---

[5]    Weinberger testified that although he has been aware of Defendants' works since 2003, he did not file suit until 2006 because he was busy with other lawsuits he had filed and because of "hurricanes." Weinberger Depo. 154:3-25-155:5 (Ex. 1).

[6]    The same 1994 solo Campbell album, Freak For Life, that contained *It's Your Birthday* (one of the compositions at issue in this case) also contained songs called *We Are The Weave* (a parodic version of the classic charity record *We Are The World*) and *All My Ex's* (an adaptation of the George Strait country music classic *All My Ex's Live In Texas*), as well as a song (*Jc's Detailed Car Wash*) the lyrics of which appear to consist of Campbell reading a newspaper advertisement for a car wash.  And the New 2 Live Crew's 1994 album, Back At Your Ass For The Nine-4, contained a song called *You Go Girl*, based on the popular slang expression "You go, girl!"

5

**Hip Hop Chants Generally.** The cultural context of both of Plaintiff's claims in this case is the "hip hop chant," a signature and longstanding feature of live performance rap music. Report of Tricia Rose ("Rose Report") p. 2 (Ex. 2). The chant is a form of audience engagement by the performer, who provides a familiar phrase or saying, often in a call-and-response format, designed to energize, include, and engage the audience. Id. Both of the short phrases at issue in this case fall into the category of "hip hop chants." Id.

*I Like It, I Love It.* In 1990, Campbell and his bandmates in 2 Live Crew recorded a song called *Sex I Like – I Love*. Weinberger Depo. 99:2-101:4 (Ex. 1).[7] While Plaintiff's copyright registration (filed years later, in 1998) identifies June 19, 1991 as the date of publication of the song, Plaintiff has no personal knowledge, or evidence, of how the song was written (or even which of the band members wrote it, though they are all credited as co-writers). Id. 104:11-105:13, 105:24-110:5, 111:3-9 and Depo. Ex. 4. Plaintiff admits that he has "no idea whether the term I Like It, I Love It was an original phrase" when 2 Live Crew recorded it. Id. 110:6-16 ("I have no idea where they got it from").

*Sex I Like – I Love* initially appeared on a live-in-concert 2 Live Crew album in 1990. Weinberger Depo. 99:8-10, 12-13 (Ex. 1). A studio-recorded version, called *I Like It, I Love It*, appeared on 2 Live Crew's 1991 album <u>Sports Weekend: As Nasty As They Wanna Be, Pt. 2</u>. Id. 104:16-21. For purposes of the infringement claim in this case, Plaintiff's expert musicologist agrees that there are no material differences between the two 2 Live Crew versions. Report of Judith Finell re: "*I Like It, I Love It*" ("Finell Report 1") ¶¶ 1-4 (Ex. 3) (identifying

---

[7]    Plaintiff's first copyright registration calls the composition *Sex I Like It, I Love It*, a slight and immaterial variation on the title that Plaintiff's expert musicologist uses for the composition in her report, *Sex I Like- I Love*. Plaintiff's subsequent copyright registrations call the composition *I Like It, I Love It*. Weinberger Depo. Ex. 4 (Ex. 1).

6

minor differences but treating both versions collectively for purposes of analysis).  In *I Like It, I Love It*, after asking the audience "How many of you ladies out there like having sex?  I know it's a whole lot of y'all ladies out there like having sex," the performer chants "Say I like it," to which the audience (or others) respond "I like it"; then the performer chants "I love it," to which the audience (or others) respond "I love it."  Lawrence Ferrara Report re: "*I Like it, I Love It*" ("Ferrara Report 1) ¶ 30 (Ex. 4).

    This call-and-response chant was not original to Campbell or his bandmates.  Rather, it had been circulating in nightclubs and parties for many years.  Rose Report pp. 3 and 5 (Ex. 2).  For example, nearly a decade earlier, in the popular and widely-acclaimed early-1980s motion picture Wild Style,[8] rapper Chief Rocker Busy Bee performed a virtually identical call-and-response, in the same lyrical context (*i.e.*, sex) in a song called *Busy Bee at the Amphitheatre*:

> To the party people out there that love sex, throw both hands in the air
> If you love sex, cmon, throw both hands in the air, wave it around if you like sex
> Say sex
> (Sex)
> Say and more sex
> (And more sex)
> Say I like it
> (I like it)
> I love it
> (I love it)...

---

[8]    Wild Style was registered for copyright by its director, Charlie Ahearn, effective March 4, 1985 with a date of first publication of July 1983.  (Ex. 5).  In a January 26, 1984 review, Richard Harrington of the Washington Post called Wild Style "a kinetic celebration of the 'hip-hop' street culture that burst out of the South Bronx in the mid- and late-'70's."  (Ex. 6)  The February 13, 1984 People magazine praised Wild Style as "filled with energy and feeling for the urban streets."  Id.  The February 22, 1984 New York Times noted that the soundtrack to *Wild Style* was "spreading the music to areas where the film has not been shown."  Id.  A 1992 article about one of the movie's stars called Wild Style a "classic" and "the first, if not only, quinessential [*sic*] hip hop movie ever made..."  Id.  The liner notes to the 1997 re-issue of the *Wild Style* soundtrack call it "the earliest record of this [hip-hop] culture on film" and gush: "There will never be another movie to match the legendary Wild Style."  (Ex. 7).

7

<u>Wild Style</u> DVD (Ex. 20), Ferrara Report 1 ¶ 30, Ex. E and Audio Ex. 1 thereto (Ex. 4).[9] Other

lyrical similarities between *Busy Bee at the Amphitheatre* and *I Like It, I Love It* include the use

of the call-and-response "I eat it (I eat it)" in the former, and "Say eat it in the morning (Eat it in

the morning), Say eat it at night (Eat it at night)" in the latter. Ferrara Report 1 ¶ 32 (Ex. 4). In

addition to the use of identical lyrics, the call and response phrases in *Busy Bee at the*

*Amphitheatre* and *I Like It, I Love It* were set to almost identical rhythms. <u>Id.</u>[10] Campbell, the

co-author of *I Like It, I Love It*, concedes that the "I like it/I love it" call-and-response was "a

chant that was used and heard various places, including concerts, prior to creation of the song 'I

Like It, I Love It.'" Declaration of Luther Campbell ("Campbell Decl.") ¶ 6 (Ex. 8); *see also*

Declaration of Curtis James Jackson, p/k/a 50 Cent ("Jackson Decl.") ¶ 9 (Ex. 9) ("the chant 'I

like it, I love it,' which I use to involve the crowd during performances ... is a chant that has

been used by many hip hop artists at concerts for many years prior to 1990").

    **The New Breed DVD.** 50 Cent's DVD <u>The New Breed</u> collects various material about

50 Cent, including music videos, interviews, and footage of 50 Cent performing live in concert.

Altogether, it contains two hours and six minutes of material.[11] <u>The New Breed</u> DVD (Ex. 20).

---

[9]    The record company that released the <u>Wild Style</u> soundtrack separately registered *Busy Bee at the Amphitheatre* with the Copyright Office as of July 6, 1984, with a date of first publication of January 3, 1983. (Ex. 5).

[10]    The same elements from *Busy Bee at the Amphitheatre* were used by another rapper, Kenny Dope, in a 1993 song called *Pick It Up* ("To the party people out there love sex, throw both hands in the air! Say sex! Say and more sex! Say I like it! I love it! I eat it!"). Ferrara Report 1 ¶ 31 (Ex. 4).

[11]    <u>The New Breed</u> DVD consists of both a DVD and a CD. The DVD contains four sections, respectively titled Documentary (24 minutes), Detroit Show (40 minutes), Music Videos (44 minutes), and Bonus Material (10 minutes). The CD contains three songs (none at issue here) totaling 8 minutes, 35 seconds.

On two or three occasions during the DVD's concert footage,[12] in interludes between songs, 50

Cent implores the audience (in a tone different from that used by either Busy Bee or 2 Live

Crew) to "Say I like it," and the audience responds "I like it"; then he chants "Say I love it," and

the audience responds "I love it."  Ferrara Report 1 ¶ 9 (Ex. 4).  These occurrences last only a

few seconds each.  Id. ¶ 8.

        The common use of the words "I like it" and "I love it" are the sole basis of Plaintiff's

infringement claim; Plaintiff's musicologist Finell does not claim any relevant or substantial

similarities in the *music* (as opposed to the lyrics) of *I Like It, I Love It* and <u>The New Breed</u>,

Finell Report 1 ¶ 23 (Ex. 3), nor does Plaintiff.  Weinberger Depo. 134:16-135:9, 141:15-143:7

(Ex. 1), Plaintiff's Interrogatory Response No. 1 (Ex. 10).  Yet Plaintiff, a lawyer who has been

involved in numerous copyright matters, admitted at his deposition:

> It's my understanding that you can't get a copyright on the words
> themselves.  It has to be the words and music.  You can't get a
> copyright on a short phrase just by itself, it's got to be part of
> something.... I don't think you can get a copyright on just words.
> It has to be associated or accompanied with music that is also
> similar.

Weinberger Depo. 67:5-14 (Ex. 1).

        Finell also concedes that the same purported similarities she identifies between *I Like It, I*

*Love It* and these snippets are equally present in the pre-existing *Busy Bee at the Amphitheatre*.

Finell Report 1 ¶ 10 (Ex. 3); Deposition of Judith Finell ("Finell Depo.") 88:14-89:10, 93:1-96:3

(Ex. 11).  Presented with the pre-existing *Busy Bee at the Amphitheatre*, Finell testified at her

deposition that she had not been asked to express, and was *not* expressing, any opinion that the

---

[12]      Defendants' musicologist has identified two such occurrences.  Plaintiff's musicologist
claims a third exists, but Defendants cannot find it at the location on the DVD where Plaintiff's
musicologist claims it is located.  Ferrara Report 1 ¶ 5 (Ex. 4).

"I like it/I love it" call-and-response was original to *I Like It, I Love It*.  Finell Depo. at 106:7-107:9 (Ex. 11).

　　　**It's Your Birthday.**  *It's Your Birthday* was written by Campbell in March or April 1994. Weinberger Depo. 95:7-13, 97:9-98:16 & Depo. Exs. 5-7; *see also* 86:10-94:16 (Ex. 1).[13]

Plaintiff identified 1994 as the date of creation on its copyright registration for *It's Your Birthday*, which was filed in 1997.  Id. 76:13-78:5, 80:23-82:6, Depo. Ex. 4 (Ex. 1).  The lyrics to *It's Your Birthday* include the phrase "Go ____, it's your birthday" repeated with various proper names used in succession, e.g.:

```
Go Sheila, it's your birthday
Go Sheila, it's your birthday
Go Freddie, it's your birthday
Go Freddie, it's your birthday
Go Anna, it's your birthday
Go Anna, it's your birthday
Go Derek, it's your birthday
Go Derek, it's your birthday
Go Freddie, go go
Go Freddie, go go
Go Freddie, go go
Go Freddie, it's your birthday
It's your birthday, it's your birthday
Go Derek, go go
Go Derek, go go
Go Tracy, it's your birthday
Go go go go right
```

　　　As with the call-and-response in *I Like It, I Love It*, Campbell "borrowed" these lyrics from popular "rap" culture of the time.  Rose Report pp. 4-5 (Ex. 2); Jackson Decl. ¶¶ 3-8 (Ex. 9) ("for many years prior to 1994… it was common in clubs to form a circle and chant some

---

[13]　　　Weinberger testified that he was present at the recording studio when the song was recorded; and that it was Campbell's practice to create his music and lyrics in the same recording session at which he recorded them.  Id.  Contemporaneous studio records produced by Plaintiff confirm that *It's Your Birthday* was created and recorded in March or April 1994.  Id., Depo. Exs. 5-7 (Ex. 1).

combination of 'go go go' and 'it's your birthday,' particularly if it was someone's birthday in the club."). This pre-existing common usage is also evidenced by, for example, the 1993 movie Who's The Man, released the year before It's Your Birthday was created. Who's the Man DVD (Ex. 20). Who's The Man, starring then-popular MTV personalities Ed Lover and Doctor Dre,[14] the hosts of the now-classic MTV rap program Yo! MTV Raps, and featuring appearances by dozens of popular rap music performers, was released to widespread publicity.[15] Articles re: Who's the Man (Ex. 12). In one of the opening scenes of the movie, actor Ed Lover plays a barber who gives a customer a comically awful haircut, then tries to appease the customer by claiming that the haircut makes him look like the handsome actor Wesley Snipes. During this scene, Lover chants the same catchphrase – "Go Wesley, Go Wesley, Go Go Go Wesley, it's your birthday" – also used the following year by Campbell in It's Your Birthday. Who's the Man DVD (Ex. 20), Ferrara Report 2, Audio Ex. 2 thereto (Ex. 15), Deposition of Lawrence Ferrara ("Ferrara Depo.") 30:5-31:23 (Ex. 13). Contacted by Defendants, Lover now declares under oath that "[t]his line was improvised during the filming and was based on a chant commonly heard at the time in nightclubs and on the radio." Declaration of Ed Lover ¶ 6 (Ex. 14). Campbell, the putative author of It's Your Birthday, admits and confirms that the phrase

---

[14]    Not to be confused with Andre Young, also known as Dr. Dre, who executive produced the Get Rich or Die Tryin' album and The New Breed DVD.

[15]    Roger Ebert of the Chicago Sun-Times reviewed Who's The Man on April 23, 1993, calling it a fresh, funny update of movies like 'Cotton Comes to Harlem' – a comedy about a couple of very bad barbers who pass the police exam by accident, ands turn out to be good at solving crimes." Id. Janet Maslin of the New York Times was less charitable, calling the film in her April 23, 1993 review "a genial but slow-moving vehicle for Ed Lover and Doctor Dre ... loaded with rap-related cameos that work only if you recognize the players ... Much of the time, the film simply produces these and other performers in walk-on roles and trades heavily on their relative familiarity." Id. Despite such mixed reviews, the film, perhaps because it "feature[d] cameos by a who's who of hip-hop and MTV notables, was a "surprising box-office hit..." Id.

was not original to him, but was "a chant that was used and heard in the clubs and on radio prior to creation of the song 'It's Your Birthday.'" Campbell Decl. ¶ 4 (Ex. 8). Plaintiff admits that he never discussed with Campbell the originality of the phrase "Go _____ it's your birthday." Weinberger Depo. 115:21-116:10, 122:1-5 (Ex. 1).

Nonexhaustive searches of USENET postings[16] from the time period confirm Lover's and Campbell's testimony, turning up several uses of the phrase "Go _____, it's your birthday" by participants in online "chat rooms" in 1993 and 1994, all pre-dating the creation of *It's Your Birthday*.[17] Ferrara Report re: "*It's Your Birthday*" ("Ferrara Report 2") ¶ 37, Ex. H thereto (Ex. 15). Indeed, one Usenet post from September 1993 uses both of the slang terms – "It's your birthday" and "You go girl" – which later turned up as titles and lyrics of Campbell and 2 Live Crew songs in 1994. (Ex. 16).

Also in 1994, prior to (or at least roughly contemporaneously with) the creation of *It's Your Birthday*, another Miami-based rap group, The Miami Bass DJ's, released a song called *The Birthday Jam* that contained similar lyrics in the same cadence, *e.g.*:

> Go granddad
> It's your birthday
> Go granddad
> It's your birthday…

---

[16] "USENET" is a bulletin board system that encompasses government agencies, universities, high schools, businesses of all size and individuals. Ferrara Report 2 fn. 9 (Ex. 15); see Ellison v. Robertson, 357 F.3d 1072, 1074 & n.1, n.2 (9th Cir. 2004) ("A [USENET] news-group is an online forum for USENET users to discuss, read about, or post messages on a particular topic. News-groups are commonly organized around a particular shared interest, such as science fiction or politics.").

[17] For example, one participant, Mary Goad, in the course of a chat with Joey Oravec, wrote: "GO JOEY, GO JOEY, GO JOEY, GO GO GO JOEY, IT'S YOUR BIRTHDAY, GO JOEY!" Id. Another participant, known as "DarkStarr," responding to a post from Kamal Larsuel-Williams announcing that it was his birthday, wrote, "let's do it NEWJACK style…. Go Kamal, it's your birthday/Go Kamal, it's your birthday!" Id.

12

Go grandma
It's your birthday
Go grandma
It's your birthday...

Ferrara Report 2 ¶ 34-36 and Audio Ex. 2 thereto (Ex. 15). And since 1994, there have been

numerous uses of similar phrases set to similar or identical rhythms in popular songs – such as in

Lil' Romeo's 2005 song *The Romeo Show Theme* ("Go Shawty, it's your birthday"), R. Kelly's

2004 song *It's Your Birthday* ("Go Drea, it's your birthday/Go Joanne, it's your birthday/Go Jay-

a, it's your birthday," etc.), Juelz Santana's 2003 song *Dipset* ("Go, it's your birthday, Go, go"),

and the song *Love Like This* by Faith Evans featuring Crooklyn Clan ("Go girlfriend, it's your

birthday/Go girlfriend, it's your birthday/Go girlfriend, it's your birthday"). Ferrara Report 2 ¶¶

38-42, Exs. J, K and L and Audio Ex. 2 thereto (Ex. 15). The phrase has also appeared in several

books in the last decade, including *Caught Up In The Rapture* by Sheneska Jackson (1996), *This

Just In* by Yolanda Joe (2000), and *Resurrecting Mingus* by Jenoyne Adams (2001). Book

excerpts re: "it's your birthday" (Ex. 17). Plaintiff has never sued for copyright infringement

based on any of these uses.

   ***In Da Club.*** In 50 Cent's song *In Da Club*, which appears on the <u>Get Rich Or Die Tryin'</u>

CD and is performed in concert by 50 Cent on <u>The New Breed</u> DVD, 50 Cent "raps" the words:

"Go! Go! Go! Go! Go! Go Shawty! It's your birthday! We go'n party like it's your birthday!

We go'n sip Bacardi like it's your birthday!"[18]  Ferrara Report 2 ¶ 21, Ex. B thereto (Ex. 15).

This occurs only once, toward the beginning of the song; the remainder of the song has nothing

to do with anyone's birthday, but consists of the narrator boasting of his prowess with women,

his material possessions, his superiority over others in the rap community, and his career

---

[18]    "Shawty" is a slang term meaning a cute girl. Urban Dictionary re: Shawty (Ex. 18).
Plaintiff's musicologist transcribed the word as "Shorty." The difference is immaterial.

1063973.1

ambitions. *In Da Club* lasts a total of three minutes and thirteen seconds; the lyrics at issue

occur only within the first eleven seconds of the song (and much of that eleven seconds is filled

with non-similar phrases such as "We go'n party" and "We go'n sip Bacardi"). Ferrara Report 2

¶ 11 (Ex. 15). This isolated use of the phrase "Go! Go! Go! Go! Go! Go Shawty! It's your

birthday!" is the entire basis of Plaintiff's *It's Your Birthday* infringement claim; Plaintiff's

musicologist Finell does not claim any relevant or substantial similarities in the *music* (as

opposed to the lyrics) of *It's Your Birthday* and *In Da Club*, Finell Report re: "*It's Your*

*Birthday*" ("Finell Report 2") ¶¶ 21, 30 (Ex. 19), nor does Plaintiff. Weinberger Depo. 134:16-

139:20 (Ex. 1), Plaintiff's Response to Interrogatory No. 1 (Ex. 10). Yet, as mentioned

previously, Plaintiff testified at his deposition that "I don't think you can get a copyright on just

words. It has to be associated or accompanied with music that is also similar" – a condition

admittedly not satisfied here. Weinberger Depo. 67:5-14 (Ex. 1).

As with *I Like It, I Love It*, Finell concedes that the same purported similarities she

identifies between *It's Your Birthday* and *In Da Club* were present in the earlier Ed Lover

performance in *Who's The Man*. Finell Depo. 63:21-72:2 (Ex. 11).[19] Presented with this pre-

existing performance, Finell testified at her deposition that she had not been asked to express,

---

[19]     Specifically, paragraph 28 of Finell's report summarizes the three "similar themes" she
identified as being present in both It's Your Birthday and In Da Club – (a) "go [Sheila]," (b) "it's
your birthday," and (c) "go, go, go (etc.)" – and the three "similar or identical" elements in each
theme: lyrics, rhythms, and rhythmic placement. Thus, she identified nine facets in which the
works are either similar or identical. At her deposition, for each of these nine facets, she
specified whether It's Your Birthday and In Da Club were similar or identical. She was then
asked to perform the same nine-facet analysis comparing It's Your Birthday with the Ed Lover
performance in Who's The Man. As her testimony shows, by her own admission there are just
as many instances of similarity and identity as between the Ed Lover performance in Who's The
Man and It's Your Birthday as there are between It's Your Birthday and In Da Club. Finell
Depo. 63:21-72:2 (Ex. 11).

1063973.1

and was **not** expressing, any opinion that the "Go _____, it's your birthday" was original to *It's Your Birthday*. Finell Depo. 99:7-18 (Ex. 11).

**Argument**

## I.    THE LEGAL STANDARD.

Summary judgment is proper if the record before the court shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The purpose of summary judgment is "to pierce the pleadings and assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56 advisory committee's note). In *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986), the Court held that summary judgment should be entered against

> a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. The moving party is 'entitled to judgment as a matter of law' because the non-moving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof.

477 U.S. at 322-23.

To prevail, the moving party must do one of two things: (1) show that the nonmoving party has no evidence to support its case, or (2) present "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437-38 (11th Cir. 1991) (en banc); *Young v. City of Augusta, Ga.*, 59 F.3d 1160, 1170 (11th Cir. 1995). If the movant successfully discharges this initial burden, the burden shifts to the nonmovant to establish, by going beyond the pleadings, that there

15

is a genuine issue as to facts material to the nonmovant's case. *Young*, 59 F.3d at 1170. The

nonmoving party must do more than rely solely on its pleadings, and simply show that there is

some metaphysical doubt as to the material facts. *Matsushita*, 475 U.S. at 586-87. A genuine

issue of material fact does not exist unless there is sufficient evidence favoring the nonmoving

party for a reasonable jury to return a verdict in its favor. *Anderson v. Liberty Lobby, Inc.*,

477 U.S. 242, 249 (1986); *Ritch v. Robinson-Humphrey Co.*, 142 F.3d 1391, 1393 (11th Cir.

1998). An issue is "genuine" if the record taken as a whole could lead a rational trier of fact to

find for the nonmoving party. *Allen v. Tyson Foods*, 121 F.3d 642, 646 (11th Cir. 1997). An

issue is "material" if it is a legal element of the claim under applicable substantive law which

might affect the outcome of the case. *Anderson*, 477 U.S. at 248; *Allen*, 121 F.3d at 646. A

mere "scintilla" of evidence in favor of the nonmovant, or evidence that is merely colorable or

not significantly probative, is not enough to meet this burden. *Anderson*, 47 U.S. at 252; *see*

*Mayfield v. Patterson Pump Co.*, 101 F.3d 1371, 1376 (11th Cir. 1996) (conclusory allegations

and conjecture cannot be the basis for denying summary judgment).

　　Under these standards, courts have "regularly granted summary judgment in copyright

cases where it is clear that the plaintiff cannot make out the elements of the claim" of copyright

infringement. *Siskind v. Newton-John*, 1987 WL 11701 at *4 (S.D.N.Y. 1987); *see, e.g., CMM*

*Cable Rep, Inc. v. Ocean Coast Properties, Inc.*, 97 F.3d 1504, 1517 (1st Cir. 1996 ("courts

clearly may determine the question of originality and, in turn, copyrightability so long as they do

so in accord with the familiar rules governing summary judgment"); *Boone v. Jackson*, 2005 WL

1560511, *4, Copy L. Rep. (CCH) P29,045 (S.D.N.Y. 2005) ("where a comparison of the two

works at issue show that the similarities relate only to non-copyrightable elements, as is the case

here, courts have consistently held that summary judgment in favor of the defendant is

16

appropriate."); *Magic Marketing, Inc. v. Mailing Services of Pittsburgh, Inc.*, 634 F. Supp. 769, 771 (W.D. Pa. 1986) ("The issue of copyrightability is typically resolved by a motion for summary judgment.…Very often no issues of material fact are in dispute and the only task for the court is to analyze the allegedly copyrightable item in light of applicable copyright law."); *Perma Greetings, Inc. v. Russ Berrie & Co., Inc.*, 598 F. Supp. 445, 447-48 (E.D. Mo. 1984) ("Summary judgment may be proper in a copyright action where a comparison of the copyrighted work and the allegedly infringing work shows that substantial similarity is clearly lacking.… [T]o arrive at summary judgment, 'a side-by-side comparison of the works involved in a copyright infringement action is both proper and appropriate.'"); *Jean v. Bug Music, Inc.*, 2002 WL 287786, *5, 2002 Copr. L. Dec. ¶ 28,405 (S.D.N.Y. 2002) ("In the context of a copyright infringement claim, summary judgment may be granted when any similarities between the works relate only to non-copyrightable elements or when no reasonable jury could find the two works substantially similar."); *Hoehling v. Universal City Studios, Inc.*, 618 F.2d 972, 977 (2d Cir. 1980) (summary judgment is appropriate in copyright cases "to put 'a swift end to meritless litigation' and to avoid lengthy and costly trials.").

## II.    THE LIMITED SCOPE OF PLAINTIFF'S CLAIMS.

Both Plaintiff and its expert musicologist concede that the claims of infringement do not concern any of the ***music*** of *I Like It, I Love It* or *It's Your Birthday* – only certain ***lyrics***. Finell Report 1 ¶ 23 (Ex. 3); Finell Report 2 ¶¶ 21, 30 (Ex. 19); Weinberger Depo. 34:16-135:9, 141:15-143:7 and 134:16-139:20 (Ex. 1), Plaintiff's Response to Interrogatory No. 1 (Ex. 10).  In addition, it is undisputed that Plaintiff cannot claim any copyright ownership over the titles of its songs. *Comins v. Discovery Communications, Inc.*, 200 F. Supp. 2d 512, 518 (D. Md. 2002)

("titles are not copyrightable"). And Plaintiff does not and cannot claim that Defendants have infringed any *sound recording* copyright owned by Plaintiff. **Weinberger Depo. 103:23-104:10 (Ex. 1)**; *see Newton v. Diamond*, 204 F. Supp. 2d 1244, 1248-49 (C.D. Cal. 2002), *aff'd*, 388 F.3d 1189 (9th Cir. 2004) ("Sound recordings and their underlying musical compositions are separate works with their own distinct copyrights."); 17 U.S.C. § 114(b) (infringement of sound recording requires mechanical duplication of "actual sounds fixed in the recording"). Rather, Plaintiff alleges only infringement of certain lyrics from two *musical compositions*, divorced from the manner of *performance* of those lyrics by any specific performer or on any particular recording. In cases such as this one, the Court "may consider only [defendant's] appropriation of the song's *compositional elements* and must remove from consideration all the elements *unique to [the] performance*. Stated another way, [the Court] must 'filter out' the…elements of the sound recording to get down to the…elements of the composition." Newton, 388 F.3d at 1193-94 (emphasis added).

## III.   THE PHRASES AT ISSUE ARE NOT ORIGINAL TO PLAINTIFF'S SONGS.

To establish copyright infringement, Plaintiff must initially carry its burden to prove both ownership of a valid copyright, and copying of *protected expression*. *Apple Computer, Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1442 (9th Cir. 1994). "[C]opyright protection may extend only to those components of a work that are original to the author." *Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., Inc.*, 499 U.S. 340, 361 (1991). Where the only copying is of unprotectable elements in a plaintiff's copyrighted work, there is no infringement. *Tisi v. Patrick*, 97 F. Supp. 2d 539, 548-49 (S.D.N.Y. 2000) (summary judgment for defendants where claims based on appropriation of unoriginal musical elements). Where, as here, the only similarity is "in

18

expression that is not proprietary to plaintiff, then an essential ingredient is lacking from plaintiff's prima facie case." *CMM Cable*, 97 F.3d at 1515.

Here, it is beyond dispute that both the "I like it/I love it" call-and-response and the phrase "Go _____, it's your birthday" were in common usage and used in other works prior to their use by Campbell and 2 Live Crew for *I Like It, I Love It* and *It's Your Birthday*. Moreover, unlike in the typical case where the plaintiff claims his work is original, here Plaintiff cannot make such a claim, and has instead admitted that he has no idea if the phrases at issue are original. If that were not enough, the author of *It's Your Birthday* and co-author of *I Like It, I Love It*, Campbell, has declared under oath that the phrases were ***not*** original to those compositions, and 50 Cent has declared that he adapted the phrases from prior uses he heard in nightclubs and at parties, not from Plaintiff's songs. *See Calhoun v. Lillenas Publishing*, 298 F.3d 1228, 1233 (11th Cir. 2002) ("the district court was correct in concluding that '[songwriter]'s testimony constitutes uncontradicted evidence of independent creation, which fully negates any claim of infringement."); *Benson v. Coca-Cola Co.*, 795 F.2d 973, 975 (11th Cir. 1986) (en banc ) (same). Thus, Defendants are entitled to summary judgment. *See, e.g.*, *Jean*, 2002 WL 287786, *1 (phrase "Clap your hands now, people clap now" in plaintiffs' song is "unprotectible because it uses common musical and lyrical phrases that have been used in other recordings" and thus "lacks the requisite originality" – summary judgment for defendant); *Boone*, 2005 WL 1560511, *3 ("Evidence proffered by the defendant noting the presence of the phrase 'holla back' in numerous songs demonstrates the banal and therefore unprotectable nature of the phrase."); *Acuff-Rose Music, Inc. v. Jostens, Inc.*, 155 F.3d 140, 144 (2d Cir. 1998) ("the prior usage of the saying ['You've got to stand for something, or you'll fall for anything'] was sufficiently widespread as to make it exceedingly unlikely ... that [the song's author] had ...

19

independently created the phrase."); *Intersong-USA v. CBS, Inc.*, 757 F. Supp. 274, 282

(S.D.N.Y. 1991) (dismissing claim where only alleged similarities were "found in many other

well-known songs," and thus constituted "unoriginal," "unprotectible expression").

## IV.    THE PHRASES AT ISSUE ARE NOT COPYRIGHTABLE.

"It is axiomatic that copyright law denies protection to 'fragmentary words and

phrases'..." *CMM Cable*, 97 F.3d at 1519; *see also Jean*, 2002 WL 287786, *5 ("Common

phrases are generally not protected by copyright."). "Clichéd language, phrases and expressions

conveying an idea that is typically expressed in a limited number of stereotypic fashions, are not

subject to copyright protection." *Perma Greetings*, 598 F. Supp. at 448; *accord, Magic

Marketing*, 634 F. Supp. at 772.[20] And trite combinations of unprotectable elements are also

unprotectable. *See, e.g., Jean*, 2002 WL 287786, *6 ("the lyrical phrase and the three notes are

so common and unoriginal that even when they are combined they are not protectible.").

Thus, courts routinely deny protection to short, trite phrases such as those at issue here.

*See, e.g., Murray Hill*, 264 F.3d at 632-33 (phrase "Good morning, Detroit.  This is J.P. on JR in

the A.M.  Have a swell day" are not copyrightable); *Jean*, 2002 WL 287786, *5 (phrase "clap

your hands now, people clap now" was not copyrightable); *Boone*, 2005 WL 1560511, *3-*4

---

[20]     "The Copyright Office's own interpretive regulations explicitly embrace this rule of non-copyrightability." *CMM Cable*, 97 F.3d at 1520, *citing* 37 C.F.R. § 202.1(a) (1994) (excluding from copyright protection "[w]ords and short phrases such as names, titles, and slogans" and "familiar symbols and designs"); *accord, Murray Hill Publications, Inc. v. ABC Communications, Inc.*, 264 F.3d 622, 632-33 (6th Cir. 2001); *see also* Compendium II of Copyright Office Practices (1984) § 404.02 (applying same principle specifically to musical compositions).  The Compendium of Copyright Office Practices sets forth "the policies upon which the examining and related practices of the Copyright Office are based." *See id.* at § 101; *see also Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 844 (1984) ("considerable weight should be accorded to an executive department's construction of a statutory scheme it is entrusted to administer").

("The presence of the phrase 'holla back,' rapped in an eighth note, eighth note, quarter note rhythmic pattern in the hook of each song is too common to be protectable ... It is black letter law that common phrases such as 'Holla Back' are not protectable."); *Perma Greetings*, 598 F. Supp. at 448 (phrases such as "Along the way take time to smell the flowers" and "A friend is someone special" are "unprotected by copyright"); *Damiano v. Sony Music Entertainment, Inc.*, 975 F. Supp. 623, 628-30 (D. N.J. 1996) (phrases such as "Truer words have not been spoken and once again the truce is broken" and "A different form of treason" in plaintiff's musical compositions "are nothing more than unprotectible phrases and cliches"); *Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (phrase "the most personal sort of deodorant" is "not subject to copyright protection"); *Smith v. George E. Muehlebach Brewing Co.*, 140 F. Supp. 729, 731-32 (W.D. Mo. 1956) (phrase "Tic Toc, Tic Toc, Time for Muehlebach" in plaintiff's musical composition is not copyrightable).

The same is true of the short, hackneyed phrases at issue here. Exhorting an audience to shout that they "like" and "love" having sexual intercourse, or urging a friend to let loose and enjoy herself ("go") because "it's [her] birthday" exhibit no more creativity than, for example, telling one's radio audience that "[t]his is J.P. on JR in the A.M.  Have a swell day" (the phrase rejected for copyright protection in *Murray Hill*) or reminding a friend to "take time to smell the flowers" (the phrase rejected for copyright protection in *Perma Greetings*).  Even if Plaintiff's songs were the first to incorporate these stale sentiments (which they indisputably were not), they do not exhibit the necessary level of creativity to justify copyright protection and give Plaintiff a judicially-sanctioned monopoly on their use.

## V.   PLAINTIFF'S AND DEFENDANTS' WORKS ARE NOT SUBSTANTIALLY SIMILAR.

To prove copyright infringement, "a plaintiff must 'prove that the copying of copyrighted material was so extensive that it rendered the offending and copyrighted works substantially similar.'" *CMM Cable*, 97 F.3d at 1513 (citation omitted); *see Boone*, 2005 WL 1560511, *3 ("If points of dissimilarity between two works exceed those that are similar, a finding of no infringement is appropriate."). Even where copying has occurred, "copying that is so trivial as to fall below the quantitative and qualitative threshold of substantial similarity will be considered *de minimis* and thus not actionable." *Jean*, 2002 WL 287786, *5, *citing Sandoval v. New Line Cinema Corp.*, 147 F.3d 215, 217-18 (2d Cir. 1998). "In making this determination, courts should consider 'the amount of the copyrighted work that was copied.'" *Jean*, 2002 WL 287786, *5, *quoting Sandoval*, 147 F.3d at 217.

The Court may compare the works at issue and determine as a matter of law that they are not substantially similar. *See, e.g., Sandoval*, 147 F.3d at 218 (affirming summary judgment where "[w]e have reviewed a video copy of the relevant portions of the alleged infringing work, and find that the defendants' copying of Sandoval's photographs falls below the quantitative threshold of substantial similarity."). Similarly, in *Jean*, the court granted summary judgment to the defendant because "the phrases constitute only a *de minimis* portion of the songs.... Overall the songs are different in sound and they convey different moods." *Jean*, 2002 WL 287786, *1. "Even assuming that the [phrases] are protectible and that there was copying, a reasonable jury could only conclude that there was no infringement because the excerpts at issue are *de minimis* and trivial compared to the entire works." *Id.* at *7. The court reached this conclusion even though the entire phrase "Clap your hands now, people clap now" repeated in plaintiff's song nine times and the excerpt "clap your hands" seventeen times (*id.* at *2): "Although the excerpts

22

repeat throughout the songs, a jury could only find that the similarity of the songs is of 'small import quantitatively and qualitatively.'" *Id.* at *7, *quoting Williams v. Crichton*, 84 F.3d 581, 588 (2d Cir. 1996); *see Damiano*, 975 F. Supp. at 628-30 (even when all of plaintiff's phrases are "taken as a whole, they are not substantially similar to [defendant's] work").

Here, comparisons of *I Like It, I Love It* with <u>The New Breed</u> DVD and *It's Your Birthday* with *In Da Club* yield the same conclusion. <u>The New Breed</u> DVD contains over two hours of material, including concert footage, videos, music, and interviews. The uses of the "I like it/I love it" call-and-response chant do not appear within *any* of the songs in the package, but only in interludes between songs, and total only a few seconds each. Similarly, *In Da Club*'s single use of the "three similar themes" (as described by Plaintiff's musicologist Finell) – within the lyrics ""Go! Go! Go! Go! Go! Go Shawty! It's your birthday! We go'n party like it's your birthday! We go'n sip Bacardi like it's your birthday!"" – occur over an eleven-second period in a three-minute, thirteen second song – or less than 6% of the total length of the song (and even much of this portion is taken up with phrases, such as "We go'n party" and "go'n sip Bacardi," that do not appear in Plaintiffs' composition). Other than the short lyrical phrases at issue, the songs do not share any common themes – *In Da Club* never returns to the subject of birthdays after the initial references in the first few seconds of the song, and the "I like it/I love it" call-and-response chants in <u>The New Breed</u> DVD are not part of any song and are apropos of nothing other than trying to engage and enthuse the live audience. *See Jean*, 2002 WL 287786, *1 ("the phrases constitute only a *de minimis* portion of [Defendants'] songs" which "are different in sound and … convey different moods" than the plaintiffs' songs). Based on the isolated, minimal uses involved here, no reasonable jury could find substantial similarity.

## CONCLUSION

For all of the foregoing reasons, Defendants request that the Court enter summary judgment in their favor on each of the Counts of Plaintiff's Complaint.

Respectfully submitted,

RUSSELL J. FRACKMAN, ESQ.
JEFFREY D. GOLDMAN, ESQ.
MITCHELL SILBERBERG & KNUPP, LLP
Trial Counsel for Defendants
Universal and Interscope Records
11377 West Olympic Blvd.
Los Angeles, CA 90064
Telephone: 310-312-2000
Facsimile: 310-312-3100

and

KAREN L. STETSON, ESQ.
Trial Counsel for Defendants
Curtis James Jackson p/k/a 50 Cent and
Shady Records, Inc.
and Local Counsel for Defendants
Universal and Interscope Records
P.O. Box 403023
Miami, Florida 33140
Telephone: 305-532-4845
Facsimile: 305-604-0598

By: _____
Karen L. Stetson
Florida Bar No. 742937

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true copy of the foregoing was hand delivered to Richard Wolfe, Esq., Wolfe & Goldstein, P.A., 100 Southeast 2nd Street, Suite 3300, Miami, Florida 33131 on this 6th day of September, 2006.

By: _____
Karen L. Stetson

1063973.1